UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIMBERLY A. STONEDALE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-1269** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "C" (4)** |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **Title 42 U.S.C. § 405(g)**. The Commissioner denied Kimberly A. Stonedale's claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act, **Title 42 U.S.C. § 1382c**.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### II.   Factual Summary

The claimant, Kimberly A. Stonedale ("Stonedale"), is a forty-five-year-old woman who previously worked as a waitress and a bartender. (Tr.387- 388). She contends that she is entitled to Supplemental Security Income Benefits because she has been disabled since December 29, 2004, as a result of open heart surgery, a broken back, leg and collarbone, nerve damage, right shoulder problems, and carpal tunnel syndrome. (Tr. 52).

Stonedale filed her application for benefits on June 29, 2004 and the application was denied on August 2, 2004. (Tr. 50, 52). On August 10, 2004, Stonedale filed a request for a hearing which took place before Administrative Law Judge ("ALJ") Charles W. Kunderer on July 18, 2005. (Tr. 22-35).

On July 27, 2005, the ALJ concluded that Stonedale was not disabled under the Social Security Act. (Finding 9 Tr. 35). He found that Stonedale suffered with bilateral lower lumbar radiculopathies, evidence of a stab wound to the heart with raised hemidiaphragm, asthma, depressed left ventricular functioning and mild mitral regurgitation, tear of the lateral meniscus, loss of medial articular cartilage, large popliteal cyst and complete ACL rupture of the right knee requiring surgery, active de-nervation limited to paraspinal muscles, and a T9 compression fracture. (Finding 2 Tr. 34). He concluded that these are severe conditions. *Id*. However, he found that Stonedale's conditions neither singly, nor in combination, met or equaled the criteria for any impairment set forth in 20 CFR appendix 1, subpart P Regulation No. 4. (Finding 3 Tr. 34). Specifically, he concluded that none of these conditions met or exceeded the listing found at listing 1.04, disorders of the spine, listing 1.02, major dysfunction of a joint, listing 3.02 chronic pulmonary insufficiency, listing 3.03 asthma, and listing 4.04 ischemic heart disease. *Id.*

He further found that Stonedale's assertions relative to symptomatology, pain, functional limitations and restrictions on activities of daily living were exaggerated, lacked corroboration and substantiation in the medical evidence, and were therefore not fully credited. (Finding 4, Tr. 34).

Stonedale sought review of the decision by the Appeals Council. However on January 6, 2006, the Appeals Council denied her request for review. (Tr. 8-10). She now seeks review of the ALJ's decision in this Court.

On review, Stonedale contends that the ALJ erred in four respects when he concluded that

she was not disabled. Specifically, she contends that the ALJ erred (1) when he rejected the opinion of her treating physician Dr. Armstrong; (2) when he credited the testimony of the vocational expert even though the vocational expert's testimony contradicted the Dictionary of Occupational Titles; ( 3) by not determining that her right shoulder impairment was severe; (4) when he failed to complete the hypothetical question to the VE that incorporated all of her limitations and (5) in rejecting the opinions of the consultative examiner, Dr. Gaines.

The Commissioner contends that the ALJ's decision is supported by the evidence. He further contends that the ALJ properly evaluated the opinion of Dr. Armstrong, her pain management specialist. The Commissioner contends that the ALJ properly relied upon the vocational expert who rendered an opinion based on Stonedale's age, education and residual functional capacity and that the ALJ properly evaluated Stonedale's impairments.

### III.   Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo,* or substitute its judgment for that of the Commissioner. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous

absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.    Analysis**

A.     **Rejection of Treating Physician's Opinion**

Stonedale contends that the ALJ erred when he rejected the opinion of Dr. Armstrong. She contends that some of her limitations found by Dr. Armstrong were consistent with the consultative examiner's assessment of her limitations.

The Commissioner contends, on the other hand, that the ALJ properly evaluated Dr. Armstrong's opinion. The Commissioner contends that the ALJ considered the factors set forth at 20 C.F.R. 416.927(d) factors and and that his decision to not give controlling weight to the treating physician is based upon substantial evidence

It is settled law that the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999).

Furthermore, in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit held that an ALJ is required to consider each of the factors set forth in 20 C.F.R. § 404.1527(d) before declining to give any weight to the opinions of the claimant's treating specialist. *See Newton* 209 F.3d at 453. This regulation requires consideration of: (1) the physician's length of treatment of the claimant; (2)

the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* at 456.

In considering the opinion of Dr. Armstrong, the ALJ noted that Stonedale had attended Armstrong Pain Management Center for years. (Tr. 23). The ALJ further noted that he assigned little weight to the opinions and conclusions of pain management specialist Dr. Armstrong. (Tr. 28). He noted that Dr. Armstrong had completed a medical Source Statement of Ability to Do Work Related Activate at the request of Stonedale's attorney. (Tr. 28-29).

He noted further that according to the restriction form, Dr. Armstrong restricted her lifting/carrying to less than ten pounds. (Tr. 29). He noted that Dr. Armstrong restricted Stonedale's ability to stand or walk to less than two hours out of an eight hour day and restricted her ability to engage in pushing and pulling throughout both her upper and lower extremities as she had a 3/5 motor strength. *Id.* The ALJ also noted that Dr. Armstrong based the upper and lower extremity limitations on Stonedale's right bicep tear, multiple rib fractures, fractured right clavicle, s/p lung/myocardial stab wounds, bilateral meniscus tears, right acromioclavicular tear, right medial collateral ligamental laxity and compression fractures of T8 & T9. *Id*.

The ALJ further noted that Dr. Armstrong restricted Stonedale from all activities requiring climbing of ladders, ropes, scaffolds, kneeling, crouching and crawling. *Id*. The ALJ noted that she could frequently engage in climbing of ramps and occasionally engage in climbing of stairs, balancing and stooping. *Id.* He noted Dr. Armstrong based the postural restrictions on her having a degenerative joint disease of the knees bilaterally, torn meniscuses, ACL and medial collateral ligament laxity. *Id.*

After noting the remainder of Stonedale's restrictions, the ALJ also noted that while Dr. Armstrong had been treating Stonedale for years, he failed to send any medical records since August 2002 that support these restrictions. *Id.* The ALJ then analyzed the records provided by Dr. Amrstong.

According to the record, Dr. Armstrong began seeing Stonedale in May 1996. (Tr. 29). The ALJ noted the dates and reasons for treatment of Stonedale through August 21, 2002 and further mentioned that he inquired of Stonedale's counsel whether there was additional information that he had available for consideration. (Tr. 30). Counsel denied having any further evidence and noted that the record was complete. *Id.*

After receiving all of the medical evidence of Dr. Armstrong, the ALJ noted that while the pain management specialist completed the restrictions form in June 2005, his late date of treatment of Stonedale for which medical records were provided was in August 2002. *Id.* The ALJ therefore found that even though the pain management specialist gave severe restrictions to Stonedale, those restrictions were not supported by the medical evidence of record. *Id*

The Court concludes that the ALJ used the appropriate legal standard as demonstrated by the analysis contained in his opinion. He considered the length of treatment, the frequency of examinations, the type of relationship and the fact that there were no medical records for three years before Dr. Armstrong determined the degree of her limitations. Accordingly, the ALJ's rejection of Dr. Armstrong's findings regarding Stonedale's limitations or restrictions is based upon substantial evidence.

    **B.**     <u>**Conflict between Vocational Expert Testimony and Dictionary of Occupational Titles**</u>

Stonedale contends that the ALJ's reliance upon the Vocational Expert's opinion that she could perform work as a sedentary entry level cashier, general office clerk, or information clerk

7

positions is not based on substantial evidence.  She notes that her past work was unskilled and that the ALJ limited her to the sedentary exertional level.

Specifically, she contends that the Dictionary of Occupational Titles (DOT) designates a cashier as a skilled position at the sedentary level, that the position of information clerk is designated as a light exertional level job and semi-skilled.  She contends that based upon her past work and the requirements of the positions, Stonedale is disabled because these positions require more exertion and skill than she possesses according to her RFC.  She contends that to conclude otherwise is error and thus the ALJ's opinion is not based upon substantial evidence.

The Commissioner contends that the ALJ's opinion is based upon substantial evidence because the Vocational Expert found that Stonedale could perform an entry level sedentary cashier or information clerk job and noted that the DOT includes these jobs at the unskilled level.  The Commissioner contends that the fact that the DOT also includes skilled sedentary cashier jobs or cashier jobs and information clerk positions that are classified as light exertional does not mean that there is a conflict with the vocational expert's opinion.

According to the record, the Vocational Expert classified Stonedale's past relevant work as a counter clerk at a donut shop as unskilled with a light exertional level of activity. (Tr. 403).  The ALJ then questioned whether Stonedale could return to her past relevant work as generally performed within the restrictions determined by him or as customarily performed within the national economy.  *Id.*  The Vocational Expert testified that Stonedale could not return to her past relevant work.

The Vocational Expert was then asked to consider a person of Stonedale's age, education, past work experience and residual functional capacity for sedentary activity with restrictions as previously mentioned and then determine whether there were jobs in the national and state

economies she could perform. (Tr. 404). The Vocational Expert testified that such a person could perform the following unskilled sedentary positions: cashier (6000 statewide and 300,000 nationwide);general office clerk (800 positions statewide and 57,000 positions nationwide); and information clerk (800 positions statewide and 75,000 positions nationwide). (Tr. 404). The Vocational Expert also testified that there were no conflicts between the DOT, here limitations, and the jobs indicated. (Tr. 404). The ALJ relied upon the testimony of the Vocational Expert and concluded that Stonedale was capable of making adjustment to other work existing in significant numbers throughout the national and statewide economies. (Tr. 34).

The Court notes that Stonedale contends that because the ALJ concluded there were jobs at the cashier, general office or information clerk level that were both sedentary and unskilled and she found five jobs in these categories that were exertionally light and skilled or semi-skilled, that the ALJ's reliance on the Vocational Expert is misplaced. However, the DOT contains jobs as a cashier and/or general information clerk at the exertional and skill levels mentioned by the Vocational Expert.

Clearly, just because the Vocational Expert did not identify particular job codes does not suggest that there were no jobs that matched the exertional and skill levels of Stonedale. For example, upon review of the DOT, the undersigned located three jobs in the categories and with the exertional and skill requirements of Stonedale: Food Checker; Check Cashier; and Telephone Quotation Clerk.[1] Further, as demonstrated by this Court's review, simply because Stonedale found jobs at a higher exertional level and requiring more skill does not mean that there were no jobs

---

[1] See Food Checker, Strength- S, SVP 3. Dictionary of Occupational Titles 211.482.014, alternate title cashier (clerical); Telephone Quotation Clerk, Strength- S, SVP 2, Dictionary of Occupational Titles 237.367-046, alternate title information clerk, brokerage; Check Cashier, Strength S SVP 3, Dictionary of Occupational Titles 211.462-026. SVP 3, alternate title cashier, check cashing agency.

in the economy at the state and national level that Stonedale could perform at the sedentary and unskilled levels.

There is no conflict between the Vocational Expert's opinion and the DOT as suggested by Stonedale. The Court concludes that the ALJ's reliance upon the VE was appropriate and his determination that there were other jobs that Stonedale could perform in the economy is based upon substantial evidence.

### C.     **Determining that Right Shoulder Impairment is Non-severe**

Stonedale next contends that the ALJ's opinion is not based upon substantial evidence because the ALJ erred when he failed to find that her right shoulder impairment was a severe impairment with the constraints of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p.

The Commissioner, on the other hand, contends that the ALJ properly determined that Stonedale's right shoulder impairment was non-severe. In so doing, the Commissioner contends that the medical records support the ALJ's finding that her shoulder impairment was non-severe.

According to the record, the ALJ noted that Stonedale initially established care with Armstrong Pain Center for right shoulder pain and other ailments in May 1996. (Tr. 29). The ALJ noted that x-rays of her right shoulder showed that the joint space was well maintained with no fractures or soft tissue calcification observed. *Id.* He also noted that by June 1996, much of Stonedale's pain was relieved through physical therapy. *Id.* The ALJ noted that from 1997 through March 15, 2002, Stonedale received no treatment associated with her right shoulder. *Id.* Instead she re-established treatment for this ailment and others on March 15, 2002. (Tr. 30). She last received treatment on August 16, 2002 and on this visit the doctor noted that she was scheduled for knee surgery but made no mention of right shoulder problems. *Id.*

The record shows that upon examination by the consultative physician, Dr. Camalyn Gaines,

of the right shoulder on November 20, 2004, the physician noted some tenderness to palpation over the acromioclavicular joint. (Tr. 256). Dr. Gaines further noted that on a scale of 0-150 that at 120 she felt pain in the AC joint. *Id.* She could abduct and adduct. *Id.* Her shoulder could externally rotate 0-80 and internally rotate to 40. *Id.* Dr. Gaines noted that her supraspinatus[2] and Yergason[3] tests were negative. *Id.*

The Court also notes that the last treatment of record for Stonedale's shoulder occurred some two years before she filed her subject claim. Dr. Armstrong's finding that Stonedale was limited in reaching in all directions is not correlated with any medical evaluation that occurred on June 21, 2005 when he prepared the medical source statement of ability to do work related activities. (349-352). The ALJ's finding that Stonedale's right shoulder impairment is not severe is consisted with case law and the medical evidence of record. Therefore, the ALJ's decision that Stonedale's right shoulder impairment is non-severe is based upon substantial evidence.

### D.    **Defective Hypothetical to Vocational Expert**

Stonedale also contends that the ALJ erred because he failed to pose a complete hypothetical to the Vocational Expert incorporating all of her disabilities and limitations that were recognized in the decision. Therefore, Stonedale contends that the ALJ's decision is not based upon substantial evidence.

The Commissioner concedes that the ALJ did not include the limitations of "occasional climbing of ramps and stairs and occasional kneeling, crouching or crawling." He contends,

---

[2] Supraspinatus tests is a test used for assessing shoulder impingement. *See* The Orthopaedic Research Institute, *Musculoskeletal Information*, at www.ori.org.au/bonejoint/shoulder/function.htm.

[3] Yergason's test is a test for evaluation of biceps tendon injury in which supination of the forearm is resisted. The elbow is flexed to 90 degrees and the patient is asked to resist while externally rotating the arm. The test is positive if this resistance produces pain in the biceps tendon. R.M. Yergason: *Supination Sign.* The Journal of Bone and Joint Surgery, Boston, 1931, 13: 160.

however, contends that failure to include these limitations constitutes harmless error because the sedentary jobs that the ALJ found that the plaintiff could do, do not involve climbing, kneeling, crouching or crawling.

The Fifth Circuit has held that a hypothetical question posed to the vocational expert by the ALJ must reasonably incorporate "all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). If this is not the case, "a determination of non-disability based on such a defective question cannot stand." *Id.* Furthermore, responses of vocational experts are relevant only to the extent offered in response to hypotheticals corresponding to medical evidence of record. *See e.g., Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982).

There are exceptions to the rule noted above. Failure to include some symptoms of impairments in a hypothetical is not error when there is no evidence that the symptoms interfere with the claimant's ability to work. *Jordan v. Heckler* 835 F.2d 1314, 1316 (10th Cir. 1987). Reliance on a vocational expert's testimony elicited by a hypothetical question that includes only those impairments that the ALJ has found to be credible is not error. *Hunter v. Chater*, 895 F. Supp. 1454, 1463 (D. Kan. 1995).

Finally, any potential error in omitting additional symptoms of impairments in a hypothetical question is minimized when the claimant is represented by counsel at the administrative hearing and is given a chance to amend the hypothetical question to ensure that it includes all necessary symptoms. *Reyes v. Barnhart*, CIV.A.01-0032, 2002 WL 1492208, at *6 (W.D. Tex. 2002)(citing *Bowling* 36 F.3d at 436.) (In *Reyes*, counsel focused on a condition not developed in the record and not deemed an impairment.).

In this case, Stonedale was represented by counsel during the administrative hearing. It is

true that the ALJ failed to include the limitations of "occasional engaging in climbing of ramps/stairs and kneeling/crouching/crawling." (Tr. 35). Stonedale's counsel then questioned the Vocational Expert about the impact the limitation of not being able to stand and walk two hours in an eight-hour day. (Tr. 404). The Vocational Expert testified that Stonedale would still be able to work because the positions indicated were sedentary positions. *Id.* After asking a few more question about this limitation, counsel for Stonedale rested. (Tr. 406)

The Commissioner contends that the failure of the ALJ to include the limitation of avoiding repetitive navigation of stairs, stooping, crouching, crawling, bending, kneeling or squatting is harmless error. The undersigned was not able to locate any jurisprudential authority for the application of this doctrine. Additionally, the Commissioner was not able to cite to any authority.

Further, while counsel had an opportunity to question the Vocational Expert, neither counsel nor the ALJ included the limitations of "occasionally engaging in climbing of ramps/stairs and kneeling/crouching/ crawling," limitations found to exist by the ALJ. ( Tr. 33). In the instant case, the hypothetical question does not appear reasonably to incorporate Stonedale's limitations. She was, however, given a real opportunity to correct defects in the hypothetical because she was represented by counsel.

Further, the sedentary job classification does not by its definition include climbing, kneeling, crouching or crawling. SSR 96-9P defines sedentary work as the ability of a person to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the sedentary criteria are met. *See* SSR 96-P, Policy Interpretation Ruling Titles II and XVI: Determining Capability To Do Other Work – Implications

of a Residual Functional Capacity for Less Than A Full Range of Sedentary Work.

"Occasionally" means occurring from very little to one-third of the time and would generally total no more than about 2 hours of an 8 hour working day.  Unskilled sedentary work also involves other activities, classified as nonexertional, such as capacity for seeing manipulation and understanding remembering and carrying out simple instructions.  The definition of sedentary work excludes the other limitations that were left out of the VE hypothetical. The Court cannot say that the ALJ committed reversible error under the circumstances.

### E.     Evaluation of Stonedale's Impairments

Finally, Stonedale complains that the ALJ erred when he rejected the opinion of the consultative examiner, Dr. Gaines.  Stonedale contends the ALJ's decision to reject Dr. Gaines's evaluation of the plaintiff's shoulder impairment, carpel tunnel syndrome and residual functional capacity.  Stonedale contends that there is no medical opinion that supports the ALJ's rejection of the consultative examiners opinions.

The Commissioner does not separately address the issue of Dr. Gaines's opinion regarding carpel tunnel syndrome.  Additionally, the Commissioner does not address the issue of the ALJ's rejection of Dr. Gaine's finding of Stonedale's residual functional capacity.  The issue however regarding the shoulder impairment was addressed earlier in this opinion.

No statute, regulation, or case law requires an ALJ to accord the opinion of a consultative examiner the weight of a treating physician.  *Charles v. Astrue*, CIV.A.06-0076, 2007 WL 1300968 (W.D. Va., May 4, 2007).  Further, the regulations allow for the rejection of a medical source opinion when that opinion is inconsistent with other evidence and not well supported.  *See* 20 C.F.R. § 404.1527(d)(3), (d)(4).

The ALJ however may not rely upon "facts" without citing to medical authority.  *See e.g.*,

*Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir. 1996) (noting that the ALJ may not impose personal medical opinion even if supported by medical tests.). Where an ALJ's opinion is based purely on personal inferences and speculation, it is unsupported. *Baker v. Barnhart,* CIV.A.05-1284, 2006 WL 4050696 (D. Kan. May 25, 2006).

> The ALJ stated that:
>
> I concurs in basically every restriction imposed by physical medicine and rehabilitation specialist Gaines except for that regarding manipulative restrictions as I feel such is based upon Ms. Stonedale's subjective complaints of searing pain right upper extremity when writing, subjective decrease sensation over right medial nerve distribution and inconsistent findings of positive Phalen's on the right with negative Tinel's. Ms. Stonedale retains full range of motion throughout her upper extremities. I also feel that Ms. Stonedale can occasionally engage in climbing of ramps and stairs, kneeling and crouching/crawling.

The record shows that Dr. Gaines upon performing the Phalen's signs and the Tinel's signs concluded that Stonedale had evidence of right carpal tunnel syndrome. Dr. Gaines did not say that that her determination was based upon the subjective complaints of Stonedale. The conflict in the Tinel test result does not mean that Dr. Gaines opinion was wrong as it was supported by an objective medical test. In contrast, the ALJ's rejection of Dr. Gaines's finding was based purely upon his subjective feelings that it was not based upon substantial evidence.

Additionally, Stonedale complains that the ALJ rejected Dr. Gaines's opinion that she could sit less than 6 hours in an eight hour day because he felt that Dr. Gaines did not fully comprehend the meaning of the term sedentary work activity. Stonedale points out that Dr. Gaines indicated in her narrative that she could engage in sedentary activities without difficulty, a medical finding. (Tr. 375).

However, the limitation on Stonedale's ability to work, as indicated in the residual functional capacity assessment, was that she could not sit for more than 6 hours. The ALJ's determination that Dr. Gaines misunderstood the meaning of the term sedentary work activity even though she is a

rehabilitation specialist and consultative examiner for the administration, clearly is a substitution of opinion. There is no indication that Dr. Gaines did not understand the term. The ALJ's decision to reject Dr. Gaines opinion without proof of confusion and with no medical support for his finding renders the opinion not based upon substantial evidence.

## V.     Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Kimberly A. Stonedale is reversed and remanded for consideration of the impact that carpal tunnel syndrome has on her ability to engage in sedentary work. Additionally, the ALJ is to fully consider the RFC of Dr. Gaines and its impact on her ability to work. To the extent that consideration of the these restrictions require the use of vocational expert testimony, the ALJ is required to do so.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 20th day of August 2007

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**